## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JASON NATHANIEL HOLLAND, )
 )
 Petitioner, )
 )
v. ) **Case No. 11-CV-277-GKF-FHM**
 )
ROBERT PATTON, Director,[1] )
 )
 Respondent. )

## OPINION AND ORDER

Before the Court is the amended 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 24) filed

by Petitioner, a state prisoner appearing pro se. Respondent filed a response (Dkt. # 26) and

provided the state court records necessary for resolution of Petitioner's claims (Dkt. # 28).

Petitioner filed a reply (Dkt. # 29). For the reasons discussed below, the amended petition for writ

of habeas corpus (Dkt. # 26) is conditionally granted on Grounds IV and parts of VII. Habeas

corpus relief is denied on the remaining grounds for relief. The original petition (Dkt. # 1) shall be

declared moot.

### *BACKGROUND*

On June 22, 2009, around 1:00 p.m., Mona Lester was driving south on State Road 550 near

Commerce, Oklahoma, in her Ford F-150 truck. As she approached the intersection with State Road

50, Lester noticed a silver car traveling west-bound on State Road 50. The car made a "semi u-turn"

---

[1]Since Petitioner is currently incarcerated at Lawton Correctional Facility, a private prison, the proper respondent in this case is Robert Patton, Director of the Oklahoma Department of Corrections. See Rule 2, Rules Governing Section 2254 Cases. For that reason, the Court Clerk shall be directed to substitute Robert Patton, Director, in place of Joseph Taylor, Warden, as party respondent in this matter.

at the intersection of the two roads, as if to begin east-bound travel. The car stopped in front of Lester, facing east, with the driver's door facing Lester's truck. A man got out of the car and rushed towards the passenger side of Lester's truck. Lester thought the man needed directions, so she lowered the window approximately 5' and asked if the man needed anything. The man opened the passenger door of Lester's truck, saw Lester's purse and responded, "[y]eah, I need that purse." Lester identified this man as Petitioner. Petitioner reached across the seat of the truck and grabbed Lester's purse off of the floorboard, shut the door, and told Lester to "have a good day." Petitioner ran back to his car, threw the purse onto the passenger's seat, and took off westbound on State Road 50. Lester gave chase and obtained the license plate number of the vehicle. As she continued following Petitioner, a different man sat up in the back seat of the car. Worried they might have a gun, Lester gave up the chase. She flagged down a passing vehicle and called 911.

At approximately 1:30 p.m., Peggy Davis saw the same silver car in front of her house a few miles from the location where Petitioner took Lester's purse. Petitioner and a second man, later identified as Jeremy Holland, Petitioner's brother and co-defendant, were identified as the two men seen in the car. The driver's side front tire of their car appeared to be flat. Less than five miles from the home of Peggy Davis, Carrie Stotts was in her front yard working in her flower beds. She heard a loud noise coming from the road and turned to see a silver car with a flat driver's side tire approaching her house. The car pulled in her driveway and two men got out. Stotts identified Petitioner as the passenger and the co-defendant as the driver.

After providing the men some tools to change their tire, Petitioner asked Stotts if he could use her phone. Stotts went into her house to retrieve her cell phone from her bedroom, returned outside, and handed her phone to Petitioner. After making the phone call, Petitioner returned the

cell phone to Stotts, who then went back inside her house to take some medication and return the phone to her bedroom. When she came out of her bedroom, she saw Petitioner standing in her living room. She yelled and Petitioner left. Stotts watched Petitioner walk back to his car and then she ran to lock the side door of her house. She returned back to the front of her house to lock her front door, but found Petitioner and the co-defendant standing in her living room, looking around and laughing. Stotts yelled again and as Petitioner and the co-defendant left, they said, "we'll get you."

Based on these facts, Petitioner was charged by Amended Supplemental Information in Ottawa County District Court, Case No. CF-2009-188A, with Conjoint Robbery, After Former Conviction of Two or More Felonies (AFCF) (Count 1), and Unlawful Entry (Count 2). (Dkt. # 28-5, O.R. at 30-33). Petitioner and his brother, Jeremy Holland, were tried jointly.[2] Petitioner chose to testify in his own defense. As a result, the trial was not bifurcated. At the conclusion of a single stage trial, a jury found Petitioner guilty of both counts and recommended a sentence of forty-five (45) years imprisonment for Count 1, and one (1) year in the county jail and a $500 fine for Count 2. Id. at 109-110. On January 15, 2010, the court sentenced Petitioner in accordance with the jury's recommendation. (Dkt. # 28-4, Tr. Sentencing at 21-22). Attorney Scott B. Goode represented Petitioner at trial.

On June 18, 2010, represented by attorney Virginia Sanders, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). (Dkt. # 26-1). Petitioner raised eight (8) propositions of error, as follows:

---

[2]Jeremy Holland, represented by separate counsel, was charged in Ottawa County District Court, Case No. CF-2009-188B with Conjoint Robbery (Count 1) and Unlawful Entry (Count 2). Jeremy did not testify in his own defense and was convicted of both counts. (Dkt. # 28-3, Tr. Vol. II at 387-88). The jury recommended a sentence of eight (8) years imprisonment for Count 1 and one year in the county jail for Count 2. Id.

| | |
|---|---|
| Proposition 1: | The verdict form in Count 1 was not in proper form and was never signed, thereby invalidating Appellant's 45-year sentence and mandating a reversal of Jason Holland's conviction for conjoint robbery. |
| Proposition 2: | Improper jury instruction on the definition of "fear," a required element for conjoint or second-degree robbery, renders Appellant's conviction unconstitutional and invalid. |
| Proposition 3: | The evidence presented was insufficient to prove Appellant guilty of conjoint robbery beyond a reasonable doubt. |
| Proposition 4: | Prejudicial evidence of prior bad acts and bad character was improperly admitted as evidence of guilt without any probative value and without any prior notice to Appellant. |
| Proposition 5: | The sentence imposed against Jason Holland is excessive and should be favorably modified. |
| Proposition 6: | Appellant was denied his due process right to be present at all critical stages of his jury trial when he was not present in chambers while peremptory challenges were exercised. |
| Proposition 7: | Jason Holland was prejudiced by ineffective assistance of counsel. |
| Proposition 8: | The cumulative effect of all these errors deprived Appellant of a fair trial and warrants relief for Jason Holland. |

Id. In a Summary Opinion filed November 8, 2010, in Case No. F-2010-110, the OCCA affirmed Petitioner's judgment and sentence. (Dkt. # 26-3).

On May 5, 2011, Petitioner, appearing pro se, filed his federal petition for writ of habeas corpus. (Dkt. # 1). On June 15, 2011, Respondent filed a motion to dismiss the petition as a "mixed petition." (Dkt. # 9). In an Opinion and Order filed August 23, 2011 (Dkt. # 18), the Court determined that the petition was a "mixed petition" and instructed Petitioner to file an amended petition raising only exhausted claims. On September 12, 2011, Petitioner filed an amended petition for writ of habeas corpus. (Dkt. # 24). In the amended petition, Petitioner raises the same eight

claims raised on direct appeal.  Id.  Respondent argues that Petitioner is not entitled to habeas corpus

relief  (Dkt. # 26).

## *ANALYSIS*

**A.      Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b), (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner

fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion

requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See

Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be

applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established

Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the

Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87 (2011); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013)).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Additionally, a factual finding by the State court shall be presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, the OCCA adjudicated all of Petitioner's claims on the merits. The Court will review the claims under the standards of § 2254(d).

## 1.     Improperly admitted evidence (Ground IV)

In Ground IV, Petitioner claims "prejudicial evidence of prior bad acts and bad character was improperly admitted as evidence of guilt without any probative value and without any prior notice

to Petitioner." (Dkt. # 24 at 6). Petitioner complains of two portions of testimony. First, Lester identified Petitioner as the man who stole her purse and testified that when she identified Petitioner after his arrest, she stated she thought the man in the back seat was a bald-headed, black man. Lester made this comment to the police in front of both defendants. Id. After she said this, Petitioner's co-defendant retorted, "'I did it. I did it. We don't associate with black guys.'" (Dkt. # 28-2, Tr. Vol. I at 129:23-24). Petitioner argues this statement was a "prejudicial remark indicating racial bias, [and] was attributed to Petitioner as well as the co-defendant who actually made the derogatory remark." (Dkt. # 24 at 6). Second, Petitioner complains that during Stotts' testimony, she stated she was "scared and afraid" when the co-defendants were at her house because "one had visible Nazi tattoos." Id. Petitioner cites to his direct appeal brief, id. at 47-51, where he argued that these statements were irrelevant and highly prejudicial, and thus, inadmissible.

The record reflects that, on direct appeal, appellate counsel argued the prejudicial evidence was admitted in violation of state law. See Dkt. # 26-1 at 29. Furthermore, appellate counsel raised federal constitutional concerns, stating that "[t]he defendant's constitutional rights include due process of law and fair trial before an impartial jury. See U.S. Const. amend. V, VI, XIV; Okla. Const. art. II §§ 7, 20." Id. The OCCA reviewed for plain error and found as follows:

> The challenged testimony was properly admissible as part of the *res gestae* of the offenses. *Warner v. State*, 2006 OK CR 40, ¶ 68, 144 P.3d 838, 868. The challenged testimony was relevant as it tended to prove the requisite elements of the offenses. 12 O.S.2001, § 2401. Its probative value of the testimony was not substantially outweighed by its prejudicial effect. *Dodd*, 2004 OK CR 31, ¶ 51, 100 P.3d at 1035; 12 O.S.2001, § 2403. Plain error did not occur.

(Dkt. # 26-3 at 6).

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir.

1999). Nevertheless, when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 825 (1991). That is true without regard to whether the evidence was properly admitted pursuant to state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); see also Ochoa v. Workman, 669 F.3d 1130 (10th Cir. 2012). Furthermore, the Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (internal quotations omitted). Because the OCCA applied the plain error test, the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test. Id. (citing 28 U.S.C. § 2254(d)). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

In this case, the Court finds that the OCCA's adjudication of this claim "resulted in a decision that was contrary to, or an unreasonable application of," clearly established federal principles of due process. 28 U.S.C. § 2254(d)(1); Payne, 501 U.S. at 825. First, based on the facts developed at trial, the challenged statements were not admissible under state law as part of the *res gestae* of the offenses. Neither Lester's testimony reciting Jeremy Holland's statement that "we don't associate with black guys," nor Stotts' description of Petitioner's Nazi tattoos was so closely

8

connected to the charged offenses as to form part of the entire transaction; nor was the testimony necessary to give the jury a complete understanding of the crimes; nor was the testimony central to the chain of events. Warner, 144 P.3d 838, 868 (Okla. Crim. App. 2006).

Even though this Court concludes the admission of this evidence was inconsistent with state law, that alone does not entitle Petitioner to habeas relief. Estelle, 502 U.S. at 67-68. However, the Court finds that, under the facts of this case, the prejudicial effect of the testimony substantially outweighed the probative value of the testimony, resulting in a fundamentally unfair trial in violation of Petitioner's Fourteenth Amendment right to due process. Payne, 501 U.S. at 825. Evidence of Petitioner's refusal to "associate with black guys" and his Nazi tattoos did nothing to either clarify or complete the witnesses' testimony. The evidence reveals nothing, for example about Petitioner's motives in committing the charged offenses. To the extent it may say anything relevant about the co-defendant's association with Petitioner, it does so while conjoining irrelevant and inflammatory insinuations. For example, if the statement that Petitioner and his co-defendant did not "associate with black guys," was meant to explain the co-defendant's confession, it also suggested that Petitioner and his co-defendant were so racially prejudiced that they would rather confess to criminal conduct than endure even an oblique suggestion that they had an African-American man in their company. Similarly, the testimony regarding Petitioner's Nazi tattoos served no purpose as an identifier, particularly since Stotts had already identified both Petitioner and his co-defendant in open court before mentioning the tattoos. (Dkt. # 28-2, Tr. Vol. I at 168-69). The only apparent significance of the testimony was to explain why Stotts was afraid of the co-defendants, and why she locked her doors and would not let them in her home. Id. at 173. Unlike the offense of conjoint robbery, however, the offense of unlawful entry, as charged in this case, id. at 97, does not contain

a fear element, and so the testimony did not support any element of the charged offense. It was unnecessary for the prosecutor to elicit the highly prejudicial testimony that Petitioner had Nazi tattoos. In other words, the challenged evidence possessed no probative value and was substantially outweighed by the danger of unfair prejudice posed by the suggestion that Petitioner and his co-defendant were racist Nazis.

Moreover, the Court finds that the admission of the inflammatory evidence impacted the jury's sentencing recommendation. The prejudicial effect of the evidence on the jury's decision to recommend a sentence of 45 years imprisonment is supported by the trial judge's comments to Petitioner at formal sentencing. Reacting to information in Petitioner's Presentence Investigation Report describing him as an Aryan brother, and apparently forgetting that the jury had heard Stotts' testimony regarding Petitioner's Nazi tattoos, the trial judge told Petitioner that he was "lucky it's only 45 years," because had the jury had been aware of his background, "[i]t might have been 4500 years that they would have sentenced you to." (Dkt. # 28-4 at 21). Given the trial judge's own recognition of the prejudicial effect of the inflammatory evidence, this Court cannot conclude that the evidence identifying Petitioner as a racist Nazi did not play a significant role in the jury's sentencing recommendation.

In summary, it is clear that improperly admitted, highly prejudicial evidence impacted the jury's sentencing recommendation resulting in the denial of fundamental fairness that is the essence of due process. Thus, the OCCA's analysis of Petitioner's federal due process claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner is entitled to habeas corpus relief and his amended petition is conditionally granted on Ground IV.

### 2. Ineffective assistance of trial counsel (Ground VII)

In Ground VII, Petitioner complains he was prejudiced by ineffective assistance of trial counsel. (Dkt. # 24 at 8). Petitioner identifies six instances where he alleges counsel was ineffective:

1) Counsel failed to present himself and petitioner in a positive manner to the jury;

2) Counsel improperly waived Petitioner's right to be present when peremptory challenges were being taken in chambers;

3) Counsel failed to use peremptory challenges to remove two very anti-defendant, biased jurors, which greatly impacted the outcome of this trial;

4) Counsel failed to request severance of Petitioner and co-defendant's jury trial;

5) While counsel did argue this was a larceny and not a robbery, he wholly failed to argue the critical fact that this crime was not "conjoint";

6) Counsel failed to object to irrelevant and prejudicial evidence that was introduced during trial.

Id. On direct appeal, the OCCA reviewed these claims under the two-part test in Strickland v. Washington, 466 U.S. 668, 687 (1984). (Dkt. # 26-3 at 7). After reviewing all of the claims, the OCCA concluded that counsel exercised sound trial strategy and that Petitioner was unable to show he was prejudiced by counsel's actions. Id. at 8. Respondent argues the OCCA's decision is not contrary to, or an unreasonable application of, Strickland. (Dkt. # 26).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or an unreasonable application of, Strickland, 466 U.S. 668. See 28 U.S.C. § 2254(d). "For purposes of

§ 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. at 410 (O'Connor, J. concurring)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Id.

Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims. A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th

Cir. 1999); Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (a petitioner must show counsel's errors rendered the results of the trial unreliable). "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)). After reviewing the record and Petitioner's claims, the Court concludes that, with respect to Petitioner's claim that counsel provided ineffective assistance in failing to object to the admission of prejudicial evidence, as discussed in Ground IV, above, and his claim that counsel provided ineffective assistance in failing to object to the co-defendant's statement based on a confrontation clause violation, the OCCA's decision was contrary to, or an unreasonable application of, Strickland.

### a. Failure to present himself and Petitioner in a positive manner

Petitioner first complains that counsel "failed to present himself and [Petitioner] in a positive manner" when counsel told the jury that he was an inexperienced attorney. (Dkt. # 24 at 62). Petitioner claims that his "attorney could just as well have said, 'Don't listen to me. I don't know what I am talking about.'" Id. The OCCA found that "counsel exercised sound trial strategy when he acknowledged his relative inexperience to the jury in an effort to build rapport and emphasized [Petitioner's] acceptance of responsibility during argument." Id. at 8. Respondent argues this decision does not run contrary to Strickland because it is "trial strategy to admits the weaknesses of one's defense." (Dkt. # 26 at 30). Respondent also argues that an unsuccessful strategy "does not mean it was unreasonable." Id.

Petitioner fails to show how counsel's comments fell outside the range of reasonable professional assistance. During voir dire, Petitioner's counsel introduced himself to the jury and gave a brief biographical background of himself, stating that he was a graduate of a nearby high school, served in the military, went to law school in Tulsa, and came "back down here to my hometown to see if I could do any help." (Dkt. # 28-2, Tr. Vol. I at 55). Counsel then stated, "I'm a little younger. I'm a little less experienced. So bear with me. If I get nervous, if I shake in my boots, please don't laugh and hurt my feelings, okay." Id. Clearly, these comments were designed build rapport and develop a connection with a local jury. They do not render the results of Petitioner's trial unreliable. As to this subclaim, Petitioner fails to show the decision by the OCCA was contrary to, or an unreasonable application of, Strickland.

### b. Improper waiver of right to be present

Next, Petitioner complains that counsel improperly waived Petitioner's right to be present during peremptory challenges and that counsel "failed to use peremptory challenges to remove two very anti-defendant, biased jurors, which greatly impacted the outcome of this trial." (Dkt. # 24 at 62). The OCCA found that Petitioner failed to show he was prejudiced by trial counsel waiving Petitioner's presence during peremptory challenges or from trial counsel's exercise of the peremptory challenges. (Dkt. # 26-3 at 8). Respondent states that the OCCA determined Petitioner was not denied a constitutional right to be present in chambers during the peremptory challenges. (Dkt. # 26 at 30-31). Respondent argues that "[b]ecause no error occurred based upon this claim, . . . counsel was not ineffective and this claim must be denied." Id. at 31. Additionally, Respondent argues Petitioner failed to show that any jurors harbored any bias against Petitioner. Id.

As discussed below, Petitioner was not denied his constitutional right to be present during all stages of his criminal trial when counsel waived his presence during the exercise of peremptory challenges. As to that claim, Petitioner fails to show counsel's performance fell below that of a reasonably competent criminal attorney. Nor can Petitioner show he was prejudiced by counsel's actions.

Similarly, Petitioner fails to show a biased juror sat on his jury. Petitioner claims the "record provides no support whatsoever for defense counsel's peremptory strikes to remove Juror Teeter and Juror Steen." (Dkt. # 26 at 63). He argues that Juror Still had a "pro-prosecution bias" due to her "lengthy, close relationship with the prosecutor" while working on the drug court, and that "Juror Tippit's bias was more than obvious," presumably because Juror Tippit "was a former, long-term police officer that wanted to stay on [the jury]." Id. at 61-65.

"'The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath.'" Sallahdin, 275 F.3d at 1224 (quoting United States v. Chanthadara, 230 F.3d 1237, 1270 (10th Cir. 2000) (further quotation omitted), cert. denied, 534 U.S. 992 (2001). "'A trial judge's determination of a potential juror's bias under this standard is a factual finding entitled to a presumption of correctness." Id. (quoting Moore v. Gibson, 195 F.3d 1152, 1168 (10th Cir. 1999)). Examining the impartiality of an individual juror on habeas corpus is not a mixed question of law and fact. Patton v. Yount, 467 U.S. 1025, 1036 (1984). It is only a question of fact where the habeas court asks, "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." Id.; Wainwright v. Witt, 469 U.S. 412, 423-24 (1985).

Here, the record shows Juror Tippit and Juror Still swore, under oath, they would follow the

court's instructions, require the State to meet its burden of proof, and decide the case on the evidence presented at trial. Nothing in the answers given by Juror Tippit and Juror Still suggests they harbored any bias against the defendant or in favor of the prosecution. Therefore, even if counsel should have used two peremptory challenges to remove Jurors Tippit and Still, Petitioner cannot show he was prejudiced by counsel's actions. As to this subclaim, Petitioner fails to show the decision by the OCCA was contrary to, or an unreasonable application of, Strickland.

### c.    Failure to request severance and object to prejudicial evidence

The Court has found above that Petitioner is entitled to habeas corpus relief on his Ground IV claim that prejudicial evidence was improperly admitted. The Court finds that trial counsel performed deficiently in failing object to that evidence and Petitioner's trial was rendered fundamentally unfair as a result of the admission of the evidence. The likelihood of a different sentencing result is substantial. Therefore, the OCCA's adjudication of this claim of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, Strickland. For that reason, Petitioner is entitled to habeas corpus relief on his Ground VII claim of ineffective assistance of counsel for failure to object to admission of prejudicial evidence.

Petitioner also claims that counsel was ineffective for failing to request severance of Petitioner's trial from his co-defendant and for failing to object to the admission of his co-defendant's "confession" and to request an appropriate limiting instruction. (Dkt. # 24 at 65-66). Petitioner argues that hearsay statements made by his co-defendant, namely "I did it, I did it," and "We don't associate with black guys," prejudiced him and severance would have been justified "had [it] ever been requested by . . . [Petitioner's] counsel." Id. at 65-66. Petitioner further argues that his co-defendant's statement, "I did it," "was used by the prosecutor as the co-defendant's

confession to prove [Petitioner] guilty of the more serious charge of conjoint robbery." Id. at 65. Finally, Petitioner argues that this evidence was hearsay and should not have been admitted as evidence against him, and counsel was ineffective when he failed to object or request a limiting instruction from the court. Id. at 66.

On direct appeal, the OCCA found that Petitioner was not prejudiced by counsel's failures. As to Petitioner's claim based on trial counsel's failure to seek a severance, the OCCA cited Carter v. State, 879 P.2d 1234, 1241 (Okla. Crim. App. 1994), and found that Petitioner "was not entitled to a severance because his defense and the Co-Defendant's defense were not mutually antagonistic." (Dkt. # 26-3 at 8). As to the admission of the co-defendant's statement, the OCCA cited Richardson v. Marsh, 481 U.S. 200, 208-09 (1987), and Fowler v. State, 779 P.2d 580, 586 (Okla. Crim. App. 1989), and found "[t]he Co-Defendant's statement 'I did it, I did it. We don't associate with black guys' was admissible in their joint trial because it did not facially incriminate Appellant." (Dkt. # 26-3 at 8-9). The OCCA also cited Bland v. State, 4 P.3d 702, 730-31 (Okla. Crim. App. 2000), and found "[t]here is not a reasonable probability that the outcome of the trial would have been different absent trial counsel's failure to request the trial court to give a limiting instruction upon the jury's use of the Co-Defendant's statement." (Dkt. # 26-3 at 9). Finally, the OCCA cited Schneble v. Florida, 405 U.S. 427, 421 (1972), and concluded it was error to not issue a limiting instruction, but found the "trial court's omission of the limiting instruction [was] harmless beyond a reasonable doubt in light of the evidence of [Petitioner's] guilt." (Dkt. # 26-3 at 9). Respondent argues that the OCCA's decisions were not contrary to, or an unreasonable application of, Strickland. (Dkt. # 26 at 33-35).

**(1)     Failure to request severance**

Severance of a jury trial is generally a question of state law that is not cognizable on federal habeas review. Fox v. Ward, 200 F.3d 1286, 1292 (10th Cir. 2000); Bond v. Oklahoma, 546 F.2d 1369, 1377 (10th Cir. 1976). "[A] criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998) (citing United States v. Youngpeter, 986 F.2d 349, 353 (10th Cir. 1993)). To make such a showing, the defendant must necessarily disclose sufficient information to enable the court to make a finding of prejudice. Id. Severance is not warranted "merely because [a defendant] may have a better chance of acquittal in separate trials." Zafiro v. United States, 506 U.S. 534, 540 (1993). Petitioner must demonstrate a compelling prejudice. Puiatti v. McNeil, 626 F.3d 1283, 1309-10 (11th Cir. 2010).

The issue of severance arose during a hearing the week prior to trial. (Dkt. # 28-1, Tr. Mot. Hr'g Nov. 24, 2009 at 27-29). At that hearing, the prosecutor made a record to memorialize a previous discussion between the parties and the trial court regarding severance. The prosecutor stated that she "brought it up when we set it at trial, and at that time both counsel [for Petitioner and co-defendant] announced that they wanted to waive any severance and proceed together." Id. at 28. Counsel for co-defendant stated that the co-defendant's defense strategy was "the old-fashioned he didn't do it" defense. Id. Co-defendant's counsel further stated that they would not be pointing the finger at Petitioner. Id. Petitioner's counsel added, "I believe it's the defendant's right to file a motion to sever. If they don't file the motion, I don't see why there's a need for a waiver." Id. at 29. The trial court agreed and stated they were proceeding to trial together. Id.

After reviewing the record, the Court concludes that Petitioner was not prejudiced by trial counsel's failure to file a motion to sever Petitioner's trial. The Supreme Court has addressed the role of joint trials, stating as follows:

> Joint trials play a vital role in the criminal justice system, accounting for almost one-third of federal criminal trials in the past five years. Many joint trials-for example, those involving large conspiracies to import and distribute illegal drugs-involve a dozen or more codefendants. Confessions by one or more of the defendants are commonplace-and indeed the probability of confession increases with the number of participants, since each has reduced assurance that he will be protected by his own silence. It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability-advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson, 481 U.S. at 209-10 (citation and footnote omitted). The record shows that Petitioner and his co-defendant waived severance or, at the very least, decided against filing a motion to sever. Petitioner does not argue his defense was mutually antagonistic to the defense of his co-defendant. Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable application of, Strickland.

### (2) Failure to object to co-defendant's statement based on a confrontation clause violation and to request limiting instruction

Petitioner claims, as he did on direct appeal, that trial counsel provided ineffective assistance in failing to object to admission of his co-defendant's statement "I did it. I did it. We don't associate with black guys," as a confrontation clause violation and in failing to request that the jury be instructed as to limitations on the use of the statement. See Dkt. # 24 at 66-67. In support of this

claim, appellate counsel cited Crawford v. Washington, 541 U.S. 36, 59 (2004) (holding that the Sixth Amendment precludes admission of out-of-court statements that are testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness). Id. The OCCA denied relief, citing Richardson, 481 U.S. at 208-09, and finding that the co-defendant's statement "was admissible in their joint trial because it did not facially incriminate Appellant." (Dkt. # 26-3 at 8-9). The OCCA further found:

> There is not a reasonable probability that the outcome of the trial would have been different absent trial counsel's failure to request the trial court to give a limiting instruction upon the jury's use of the Co-Defendant's statement. We find that the trial court's omission of the limiting instruction is harmless beyond a reasonable doubt in light of the evidence of Appellant's guilt.

Id. (citations omitted).

In Bruton v. United States, 391 U.S.123 (1968), the Supreme Court addressed the issue of a nontestifying co-defendant's confession admitted at a joint trial and held that:

> [A] defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant.

Spears v. Mullin, 343 F.3d 1215, 1230 (10th Cir. 2003) (citations omitted). "Bruton applies, however, only if the statement expressly implicates the defendant." Id. (citing Richardson, 481 U.S. at 208). As explained by The Tenth Circuit Court of Appeals:

> *Richardson* allows a court, despite the Confrontation Clause, to admit the confession of a non-testifying co-defendant [that does not expressly implicate the defendant]. The confession must be (i) redacted to eliminate any reference to the non-confessing defendant, and (ii) accompanied by an appropriate limiting instruction that the confession is to be considered only against the confessor.

Id. 1230-31 (alteration in original) (citation omitted).

In this case, Lester testified that, upon arrival at Stott's residence, she saw that law enforcement officials had two subjects on the ground and she pointed to one of them, Petitioner, and said, "[t]hat's the one." See Dkt. # 28-2, Tr. Vol. I at 128. Petitioner's brother and co-defendant, Jeremy Holland, responded by saying, "I did it. I did it." Id. at 129. Lester said, "[b]ut there was a black guy." Id. That's when Petitioner's co-defendant said, "I did it. I did it. We don't associate with black guys." Id.

As stated above, the OCCA determined that the statement was admissible because it did not directly implicate Petitioner. The Court finds, however, that the OCCA's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The record reflects that, during her closing argument, the prosecutor emphasized the importance of the co-defendant's statement in support of otherwise weak evidence necessary to convict Petitioner and his co-defendant of conjoint robbery. See Dkt. # 28-3, Tr. Vol. II at 356-60. Thus, the statement was the primary fact used by the State to implicate Petitioner directly in the crime charged, conjoint robbery. Furthermore, Petitioner's co-defendant did not testify, leaving Petitioner unable to confront his co-defendant at trial and subject the statement to cross-examination. As a result, admission of the co-defendant's statement at trial violated Petitioner's rights under the Confrontation Clause of the Sixth Amendment.

Confrontation clause violations are subject to harmless error analysis. See Littlejohn v. Trammell, 704 F.3d 817 (10th Cir. 2013). This Court's harmless error review is de novo. Jones v. Gibson, 206 F.3d 946, 957 (10th Cir. 2000). The appropriate harmless error standard to be applied on habeas review is from Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). See Fry v. Pliler, 551 U.S. 112, 121-22 (2007); Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). That standard

"requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 631 (quotation omitted). "[E]rrors which do not contribute to the verdict should not be reversed unless their effect is fundamentally unfair." United States v. Turrietta, 696 F.3d 972, 984 (10th Cir. 2012) (citing Rose v. Clark, 478 U.S. 570, 579 (1986)). In determining whether error was harmless in this context, the Court considers factors such as the "importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." Littlejohn v. Trammell, 704 F.3d 817, 846 (10th Cir. 2013) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)); see also Jones v. Gibson, 206 F.3d 946, 957 (10th Cir. 2000); Wiggins v. Boyette, 635 F.3d 116, 121-22 (4th Cir. 2011).

The Court finds that the confrontation clause violation, coupled with trial counsel's failure to request and the trial court's failure to issue a limiting instruction,[3] had a substantial and injurious effect or influence in determining the jury's verdict. As discussed above, the prosecutor used the co-defendant's admission of his involvement in the crime as the keystone for arguing, during closing argument, that the two defendants were guilty of the crime of conjoint robbery. She expressly stated that his statement was a truthful admission of his involvement in the robbery. (Dkt. # 28-3, Tr. Vol.

---

[3]Even if a limiting instruction had been given immediately after introduction of the co-defendant's statement, Richardson, 481 U.S. at 211, given the nature of the crime charged and under the facts of this case, the confrontation clause error would not have been cured. Because the prosecutor used the improperly admitted co-defendant's statement as direct evidence supporting the conjoint element of the crime, an instruction directing the jury to consider the statement as to only the confessing co-defendant would not safeguard against inappropriate use of the confession against the non-confessing co-defendant. Cf. Fowler v. Ward, 200 F.3d 1302, 1307 (10th Cir. 2000), overruled on other grounds, Moore v. Marr, 254 F.3d 1235, 1239 (10th Cir. 2001).

II at 356-57). She went on to characterize the other evidence supporting the conjoint nature of the crime as "little building blocks." Id. at 357. In fact, the corroborating evidence was extremely weak. Lester identified only Petitioner as the man who took her purse. (Dkt. # 28-2, Tr. Vol. I at 129). Lester testified that she saw a second man, not Petitioner, sit up in the back seat as she began to chase after Petitioner's car immediately following the robbery. Id. at 124-25. The State presented photographs of items found on the floor of the back seat where the co-defendant was sitting, including a multi-pack of chewing gum that Lester testified was in her purse when Petitioner took it. Id. at 216-17. The State also presented evidence that Lester's purse was discovered beside the roadway on the side corresponding to the passenger side of the vehicle occupied by Petitioner and his co-defendant. Id. at 154-59. The jury also heard Petitioner testify that his brother was in the car, asleep in the back seat, and that he did not wake up until after Petitioner had thrown the purse over the top of the car out of the driver's side window. (Dkt. # 28-3, Tr. Vol. II at 279-80). Petitioner also testified that his brother never touched any of the contents of the purse and had nothing to do with the taking of Lester's purse. Id. at 281-82. Thus, other than the co-defendant's improperly admitted statement "I did it. I did it," the jury heard, at best, only weak, circumstantial evidence suggesting the co-defendant played any role in the theft of Lester's purse. Even the circumstantial evidence was contradicted by Petitioner's testimony.

In light of the prosecutor's emphasis on the co-defendant's statement of involvement, the Court finds that the improperly admitted statement, which Petitioner had no opportunity to cross-examine, had a substantial and injurious effect or influence in determining the jury's verdict. On the facts presented, the Court finds that "[g]rave doubt" exists as to the effect of the confrontation clause or that "the matter is so evenly balanced that . . . [the Court feels] in virtual equipoise

regarding the error's harmlessness." <u>Patton v. Mullin</u>, 425 F.3d 788, 800-01 (10th Cir. 2005) (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432, 435 (1995)) (internal quotation marks omitted). Thus, the confrontation clause error was not harmless.

Petitioner's trial counsel failed to object to admission of the co-defendant's statement. In light of the Court's determination that the admission of the statement was a violation of Petitioner's right to confront a witness against him on the issue of conjoint robbery, the Court finds that trial counsel performed deficiently in failing to object to the statement. Furthermore, the admission of the statement had a substantial and injurious effect in determining the jury's verdict and the error was not harmless. Therefore, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different and Petitioner satisfies the prejudice prong of <u>Strickland</u>. The OCCA's resolution of this claim of ineffective assistance of trial counsel was an unreasonable application of <u>Strickland</u> and, for that reason, Petitioner is entitled to habeas corpus relief.

In summary, Petitioner is entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel for failing to object to the admission of prejudicial evidence and for failing to object to the co-defendant's statement "I did it. I did it," which the prosecutor used as evidence of conjoint robbery, as a confrontation clause violation. The OCCA's decision on these claims was contrary to, or an unreasonable application of, <u>Strickland</u>. Habeas relief is granted on those subclaims of ineffective assistance of trial counsel.

### d. Failure to argue element of "conjoint"

Petitioner claims his trial counsel "wholly failed to argue the critical fact that his crime was not 'conjoint'" when he argued the crime was larceny not robbery. (Dkt. # 24 at 66). Petitioner argues "[t]his argument is essential because first-degree conjoint robbery as charged against [Petitioner] carried a minimum of 20 years to life in prison, while second-degree robbery by only one person carried four years to life in prison."[4] Id. Though raised on direct appeal, the OCCA did not directly address this claim. Respondent argues that "the OCCA found Petitioner's conviction for conjoint robbery sufficiently supported by the evidence and . . . found counsel was not ineffective" on Petitioner's remaining claims of ineffective assistance of counsel claims. (Dkt. # 26 at 36).

The record shows Petitioner's trial counsel made the strategic decision to focus on the fear element of robbery. It was co-defendant's counsel who focused on whether it was one or two people who approached Lester's vehicle and robbed her of her purse. Petitioner's trial counsel filed a motion to quash the Information on conjoint robbery charge based on the absence of force or fear. (Dkt. # 28-1, Tr. Mot. Hr'g Nov. 24, 2009 at 3). The court agreed with counsel's argument regarding force and commented that the State needed to strengthen their evidence in order to prove the fear element of the robbery charge. Id. at 4-5. At trial, after Lester testified she was afraid during the robbery, Petitioner's counsel thoroughly cross-examined Lester and focused on whether

---

[4]The Court notes that the jury instruction on the lesser included offense of second degree robbery erroneously stated that "[t]he crime of Robbery in the Second Degree after two (2) or more felony convictions is punishable by not less than four (4) years nor more than life." See Dkt. # 28-5, O.R. at 149-50. The correct range of punishment for Robbery in the Second Degree after two (2) or more felony convictions, under OKLA. STAT. TIT. 21, § 51.1(B), was twenty (20) years to life. None of the parties objected to the instruction when afforded the opportunity by the trial judge. See Dkt. # 28-3, Tr. Vol. II at 318.

Lester's stated fear was reasonable in light of the circumstances at the time of the robbery. (Dkt. # 28-2, Tr. Vol. I at 135-38, 143-46). After the close of State's evidence, Petitioner's counsel "reiterat[ed]" his motion to quash and demurred to the evidence. (Dkt. # 28-3, Tr. Vol. II at 260-65). Finally, during Petitioner's testimony he stated that his brother was in the car with him at the time of the robbery, but had no knowledge of the robbery because he was asleep in the back seat. Id. at 279-280. During cross-examination by co-defendant's counsel, Petitioner stated that his co-defendant did not touch the contents of the purse, was not aware of the robbery, and that he was prepared to accept responsibility for taking the purse, just not the crime charged. Id. at 282, 287. During closing argument, counsel continued to focus on the fear element of robbery and whether Lester was afraid when Petitioner took her purse. Id. at 367-371.

The record shows that even if Petitioner's counsel should have raised arguments regarding the "conjoint" element of the crime, Petitioner was not prejudiced by this failure because the matter was placed before the jury by co-defendant's counsel and by Petitioner's testimony. Had Petitioner's co-defendant successfully convinced the jury that he was not guilty of conjoint robbery, then Petitioner would have also been not guilty of conjoint robbery. However, the evidence was nonetheless sufficient to convict Petitioner of robbery unless he created reasonable doubt as to the "fear" element. For that reason, trial counsel's strategy to focus on the element of fear was reasonable. Petitioner is not entitled to habeas corpus relief on this subclaim of ineffective assistance of trial counsel.

### 3.     Invalid verdict form (Ground I)

In Ground I, Petitioner claims the verdict form for Count 1 "was not in proper form and was never signed." (Dkt. # 24 at 4). Petitioner argues the improper form and lack of signature

invalidates his sentence and mandates a reversal of his conviction. Id. On direct appeal, the OCCA reviewed this claim for plain error. (Dkt. # 26-3 at 2). The OCCA found no plain error because "the purpose and intent of the jury can be ascertained" from the record. Id. at 3 (citing OKLA. STAT. tit. 22, §§ 919, 920). The OCCA noted that the jury announced they reached a unanimous verdict and, after the court clerk read the verdicts for both defendants, the court polled the jury whereby "each juror affirmed that the verdicts read were his or her verdict." Id. Additionally, the OCCA found no plain error with the verdict form on Count 1 because "[t]he front page of the verdict form, the jury instructions and the trial court each encouraged the jury to consider the lesser included offenses." Id. at 3.

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle, 502 U.S. at 67-68 (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). A federal habeas court is limited to determining whether a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court may, however, review a state law claim to determine whether the alleged violation rendered a petitioner's trial so fundamentally unfair as to deprive petitioner of his federal constitutional rights. See Aycox v. Lytle, 196 F.3d 1174, 1179-80 (10th Cir. 1999) (citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)); Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998); Bagby v. Jones 495 F. App'x 860, 861 (10th Cir. 2012) (unpublished).[5] In addition, as stated above, the Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due

_____

[5]This unpublished court decision is cited herein as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

27

process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." Thornburg, 422 F.3d at 1125 (internal quotations omitted). Because the OCCA applied the plain error test, the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test. Id. (citing 28 U.S.C. § 2254(d)). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." Russell, 411 U.S. at 432.

Petitioner alleges that the jury never received the second page of the verdict form, which listed the lesser included offenses for Count 1. (Dkt. # 24 at 4). Petitioner's claim is based on the fact that, in the Original Record, the first and second pages of the verdict form for Count 1 are not Bates stamped sequentially. The second page of the verdict form for Count 1 is located at the end of the jury instructions and, like the first page of the verdict form, is unsigned. Id. at 28; see also Dkt. # 28-5, O.R. at 109, 158-59.

After careful review of the record, the Court concludes Petitioner is not entitled to habeas relief on this claim. First, the unsigned verdict form on Count 1 did not deprive Petitioner of a fair trial. As noted by the OCCA, the members of the jury stated aloud they had reached a unanimous verdict. (Dkt. # 28-3, Tr. Vol. II at 386). Each juror individually affirmed the verdict, as read, was his or her verdict. Id. at 389-90. Next, the record shows the trial judge thoroughly instructed the jury on the lesser included offenses and Petitioner's trial counsel discussed lesser included offenses during his closing argument. Id. at 332-35, 370-71. Notably, the judge instructed the jurors on the elements for each of the lesser included offenses applicable to Petitioner and explained that the verdict form included these lesser offenses for their consideration. Id. at 332-35. After concluding with the uniform jury instructions, the judge recommended that the jury "go through the instructions

and separate the instructions as to each defendant, because there's some instructions that are appropriate as to one defendant but are not appropriate or apply to the other one." Id. at 341. The judge emphasized that "you have to determine whether both defendants were involved in the robbery" and both are required for conjoint robbery. Id. at 342. The judge explained "if you find only one, then you can't find conjoint." Id. If the jury arrived at that conclusion, the judge said, "[t]hen you simply go down your progression on what I call the lesser includeds and look at each defendant separately." Id. The record leaves no doubt that the jury had the information necessary to consider adequately the lesser included offenses when weighing the extent of Petitioner's culpability.

Finally, the separation of verdict form pages in the Original Record does not demonstrate that the jury did not receive both pages of the verdict form for deliberations. Petitioner presents no evidence, much less clear and convincing evidence, to rebut the OCCA's finding that "[r]egardless[] if the second page of the verdict form was not provided to the jury," the jury had sufficient information and instructions to consider the lesser included offenses. (Dkt. # 26-3 at 3). This claim is speculative, at best. Petitioner is not entitled to habeas relief on Ground I.

### 4.     Improper jury instruction (Ground II)

In Ground II, Petitioner claims the jury was improperly instructed "on the definition of 'fear'" thereby rendering his conviction "unconstitutional and invalid." (Dkt. # 24 at 5). Petitioner argues that the evidence presented at trial does "not support[] the jury instruction on the definition of 'fear.' If a jury is to find a defendant guilty of an act, the facts of that act must be supported by jury instructions." Id. Petitioner also claims the trial court confused the jury by giving Instruction No. 31 prior to the instructions for the lesser included offenses and interfered with the jury's

consideration of lesser included offenses.[6]  Id. at 34-35.  On direct appeal, the OCCA reviewed for plain error.  (Dkt. # 26-3 at 4).  First, the OCCA found the trial court used the proper instruction for definition of fear.  Id.  Then, the OCCA determined that, when taken as a whole, the jury instructions "accurately stated the law regarding lesser included offenses and sentence enhancements for prior convictions."  Id.  The court also found that because Petitioner admitted his prior felony convictions when he took the stand, this "waived the necessity of a second stage and left no question of fact regarding the existence of the former convictions for the jury to decide."  Id. at 4.

It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'"  Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").  The burden on a petitioner attacking a state court judgment based on an omission or an incomplete jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'"  Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

---

[6]Instruction No. 31 directed that the jury must find that Petitioner committed the crime of conjoint robbery beyond a reasonable doubt in order to return a verdict of guilty.  It also stated that if there is reasonable doubt or if the State failed to prove each element, the jury must return a verdict of not guilty.  The instruction further provided that the crime of conjoint robbery, after conviction of two or more felonies, is punishable by a term of imprisonment not less than twenty (20) years nor more than life.  (Dkt. # 28-5, O.R. at 145).

Petitioner argues the court should have used the following definition of fear:

Fear of Immediate Injury (First-Degree Robbery) - Fear of immediate injury to the person is of such nature as, in reason and common experience, is likely to induce a person to part with his/her property against his/her will and temporarily to suspend his/her power to exercise will. To establish robbery, fear of immediate injury must be employed either to obtain or to retain possession of property, or to prevent or to overcome resistance to its taking. Fear used only as means of escape is not sufficient to establish robbery.

(Dkt. # 24 at 34). At Petitioner's trial, Instruction No. 26 provided the jury with the elements of conjoint robbery: when two or more persons wrongfully take and carry away of personal property of another, from the immediate presence of another, by means of fear. (Dkt. # 28-5, O.R. at 140). Instruction No. 27 defined "fear" as follows: "[f]ear of unlawful immediate injury to the person of the one robbed. Fear used only as a means of escape is not sufficient to establish robbery." Id. at 141. On direct appeal, the OCCA, citing OKLA. STAT. tit. 21, § 794, found that the trial court properly instructed the jury. See Dkt. # 26-3 at 4. Under OKLA. STAT. tit. 21, § 794, "[t]he fear which constitutes robbery may be . . . [t]he fear of an unlawful injury, immediate or future, to the person or property of the person robbed . . . ." The definition of fear given by the trial court conforms with the Oklahoma statutes. The definition did not result in a trial "so fundamentally unfair as to deprive [P]etitioner of a fair trial and to due process of law." Nguyen, 131 F.3d at 1357.

As to Petitioner's remaining complaints regarding the jury instructions, the Court finds that the instructions did not deprive Petitioner of a fair trial. The trial court issued thirty-eight instructions at the close of evidence. (Dkt. # 28-3, Tr. Vol. II at 319; Dkt. # 28-5, O.R. at 115-157). Some instructions applied only to Petitioner and some applied only to his co-defendant. Most of the individualized instructions specifically addressed the lesser included offenses for both defendants. As discussed above, in an effort to assist the jurors in sorting through the instructions for their

deliberations, the trial court provided a separate oral instruction, stating that some of the instructions were appropriate to one defendant but not the other and suggesting the jury "go through [the instructions] and separate the copy so you have a set of instructions that apply to each defendant." (Dkt. # 28-3, Tr. Vol. II at 341). When taken as a whole, the jury was properly instructed on the lesser included offenses and had all of the instructions necessary to consider all of the lesser included offenses. Petitioner was not deprived of due process. Habeas relief on Ground II is denied.

### 5.        Excessive Sentence (Ground V)

In Ground V, Petitioner claims his sentence is excessive. (Dkt. # 24 at 7). Petitioner argues this was only "a purse snatching" and "'[t]he crime should have been properly filed and prosecuted as larceny after two or more former non-violent felony convictions." Id. Petitioner states "[a]lthough Petitioner's sentence is technically within the range of punishment provided by law, it does not bear a direct relationship to the nature and circumstances of the offense." Id. On direct appeal, the OCCA found the sentence within the applicable statutory range and was not excessive "when considered under all the facts and circumstances of the case." (Dkt. # 26-3 at 6).

Sentencing is a matter of state law and a federal habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Habeas corpus review generally ends "once we determine the sentence is within the limitation set by statute." Id. The second page of the Amended Information identified seven prior convictions. (Dkt. # 28-5, O.R. at 32-33). Petitioner took the stand and admitted to five of the prior convictions and stipulated to the admission of the five corresponding judgment and sentences into evidence. (Dkt.

# 28-3, Tr. Vol. II at 288-292). The court instructed the jury, "[t]he crime of Conjoint Robbery after the conviction of two (2) or more felonies is punishable by imprisonment in the State penitentiary for a term of not less than twenty (20) years nor more than life." (Dkt. # 28-5, O.R. at 145; <u>see also</u> OKLA. STAT. tit. 21, §§ 51.1, 800. Petitioner's forty-five year sentence, though severe, is within the range of punishment allowed under Oklahoma law.[7] Therefore, Petitioner is not entitled habeas corpus relief on the state law claim raised in Ground V.

### 6.    Sufficiency of the evidence (Ground III)

In Ground III, Petitioner claims the evidence presented at trial "was insufficient to prove [him] guilty of conjoint robbery beyond a reasonable doubt." (Dkt. # 24 at 5). Petitioner argues "the State's evidence was insufficient because it did not prove the element of 'fear' or that the offense was 'committed by two or more persons.'" <u>Id.</u> On direct appeal, the OCCA found that a rational trier of fact could have found beyond a reasonable doubt that (1) Petitioner "committed some act, word, gesture or deed calculated to produce a fear of injury to the property or person" and placed the victim in a state of fear, and (2) Petitioner's brother "acted conjointly in the offense." (Dkt. # 26-3 at 5). The OCCA concluded that the evidence in the case, when viewed in a light most favorable to the State, was sufficient to prove beyond a reasonable doubt that Petitioner was guilty of conjoint robbery. <u>Id.</u> Respondent argues this decision was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 26).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the

---

[7]Conjoint robbery is an "eighty-five percent" crime under Oklahoma law, meaning Petitioner must serve not less than eighty-five percent of the forty-five year sentence prior to becoming eligible for parole. OKLA. STAT. tit. 21, § 13.1(7).

essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). The Court "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319. The Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

Petitioner complains the evidence was insufficient to find him guilty of Conjoint Robbery. Under Oklahoma law, a person is guilty of conjoint robbery when two or more persons wrongfully take and carry away personal property of another, from the immediate presence of another, by means of fear. See Dkt. # 28-5, O.R. at 140; OKLA. STAT. tit. 21, §§ 791, 800. The trial court instructed the jury that Petitioner could not be convicted of conjoint robbery unless the State proved beyond a reasonable doubt eight elements: (1) wrongful; (2) taking; (3) carrying away; (4) personal property; (5) of another; (6) from the immediate presence of another; (7) by fear; (8) committed by two or more persons. (Dkt. # 28-5, O.R. at 140). Oklahoma statutes define "conjoint robbery" as "robbery as defined by section 791, except that two or more persons must participate in the commission of the crime." Stephens v. Jones, 2009 WL 5216912, at *12 n.36 (W.D. Okla. 2009); see also OKLA. STAT. tit. 21, § 800. Section 800 creates joint liability to "persons present and aiding such robbery." Thus, under Oklahoma law, an aider and abettor of a crime is considered a principal and is "equally culpable with other principles [sic]." Conover v. State, 933 P.2d 904, 910 (Okla. Crim. App. 1997).

"Aiding and abetting in the crime requires the State to show the accused procured it to be done, or aids, assists, abets, advises or encourages the commission of the crime. Mere presence or acquiescence, without participation, does not constitute a crime." Hindman v. State, 647 P.2d 456, 457 (Okla. Crim. App. 1982). "Proof that [a] defendant aided and abetted the principals in the commission of the crime can be proven by circumstantial evidence, and if sufficient, . . . will support the verdict." Battles v. State, 459 P.2d 623 (Okla. Crim. App. 1969).

After reviewing the record, the Court finds the evidence, when viewed in a light most favorable to the state, was sufficient to prove beyond a reasonable doubt that Petitioner was guilty of conjoint robbery. As to the element of fear, Petitioner admitted he turned his car in front of Lester's truck causing her to stop. (Dkt. # 28-3, Tr. Vol. II at 276). Petitioner got out, approached the passenger side of Lester's vehicle and opened the door. Id. at 276-77. Upon seeing the purse on the floorboard next to Lester's legs, Petitioner reached into the truck, and took the purse. Id. at 278. Petitioner ran back to his car and drove away with the purse in his possession. Id. at 278-79. Lester testified that, as Petitioner "was rushing toward [her] vehicle," she became apprehensive because she was unable to lock her doors. (Dkt. # 28-2, Tr. Vol. I at 111-12). Lester testified that when Petitioner "jerked" open the passenger door, she was scared because she "didn't know what he was going to do." Id. at 112. Lester stated she was scared when Petitioner reached in and grabbed her purse because she "didn't know what was going to happen next." Id. at 113. Even after Petitioner told Lester to "have a nice day" and closed the door, Lester remained in fear "because he was in control of the situation." Id. at 114. This testimony was sufficient to prove the element of fear.

Under the <u>Jackson</u> standard, the evidence, though thin and mostly circumstantial, was also sufficient to find Petitioner conjointly committed the robbery with his brother. "<u>Jackson</u> leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2064 (2012). It is not for this Court, on habeas review, to evaluate witness credibility or question the jury's reasonable conclusion based on the record. <u>Wingfield v. Massie</u>, 122 F.3d 1329, 1332 (10th Cir. 1997). The State presented uncontested photographs of the interior of the car Petitioner was driving. The photographs showed items on the floor of the back seat where the co-defendant was seen sitting, including a multi-pack of gum that Lester testified she had in her purse when Petitioner took her purse. (Dkt. # 28-2, Tr. Vol. I at 216-17). Petitioner testified that his brother was in the backseat of the car at the time of the robbery. (Dkt. # 28-3, Tr. Vol. II at 279-80). The State also presented evidence that Lester's purse was discovered beside the roadway on the side corresponding to the passenger side of the vehicle occupied by Petitioner and his co-defendant. (Dkt. # 28-2, Tr. Vol. I at 154-59).[8] The State's case emphasized the ongoing conjoint criminal activities of the brothers on that afternoon. The State presented evidence showing Petitioner and his brother unlawfully entered Stotts' home. (Dkt. # 26-2, Tr. Vol. I at 178-80). Petitioner testified both he and his brother were intoxicated, <u>see</u> Dkt. # 26-3, Tr. Vol. II at 281, and stipulated that approximately thirty minutes after the robbery and seven miles from the location of the robbery, his brother was seen driving the same silver car with Petitioner in the front passenger seat and the driver's side tire going flat, <u>see</u> Dkt. # 26-2, Tr. Vol. I at 161.

---

[8]Petitioner testified that he was driving when he threw the purse out of the driver's side window over the top of the car. (Dkt. # 28-3, Tr. Vol. II at 293-94).

Additionally, Lester testified that after she identified Petitioner as the man who took her purse, the co-defendant said, "I did it. I did it." (Dkt. # 28-2, Tr. Vol. I at 129). Lester stated that when the co-defendant made this statement, she responded aloud, "But there was a black guy." Id. Then co-defendant replied, "I did it, I did it. We don't associate with black guys." Id. The arresting police officer testified that after the co-defendant said he did it, Petitioner told his co-defendant "to shut up. Just shut up." Id. at 214. As discussed in Part 2(c)(2) above, trial counsel provided ineffective assistance in failing to object to the co-defendant's statement as a violation of Petitioner's rights under the Confrontation Clause. Nonetheless, the Court finds that the properly admitted evidence, while weak and entirely circumstantial, was constitutionally sufficient for a rational trier of fact to conclude Petitioner's co-defendant aided and abetted Petitioner in the commission of a robbery.[9]

Based on the foregoing, a reasonable jury could have found Petitioner placed Lester in a state of fear when he took her purse and that Petitioner and his brother acted conjointly in the offense. Viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, Petitioner fails to show that the OCCA's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S.

---

[9]The Court notes that, even if the evidence were insufficient to support Petitioner's conviction of conjoint robbery without the improperly admitted evidence, if the evidence is sufficient when the improperly admitted evidence is considered, the Double Jeopardy Clause allows retrial. See Lockhart v. Nelson, 488 U.S. 33, 40-42 (1988). In this case, after reviewing all of the evidence admitted by the trial court, the Court finds that retrial is permissible under the Double Jeopardy Clause. Id. at 41.

St. at 1702. The OCCA's decision was not contrary to, or an unreasonable application of, <u>Jackson</u>. Habeas relief on Ground III is denied.

### 7. Right to be present during critical stages of trial (Ground VI)

In Ground VI, Petitioner claims he was denied due process and his "right to be present at all critical stages of his jury trial" when he was not present in chambers during the exercise of peremptory challenges. (Dkt. # 24 at 7). Petitioner argues that even though his attorney waived Petitioner's presence in chambers, "nothing in the record ever established that Petitioner joined in this waiver or even knew himself that he had the right to be personally present at all 'critical' stages of his criminal proceedings." <u>Id.</u> at 7-8. On direct appeal, the OCCA determined that Petitioner was present throughout voir dire and had "time to communicate with counsel any pertinent information regarding the exercise of the peremptory challenges." (Dkt. # 26-3 at 7). The OCCA concluded that Petitioner's constitutional and statutory rights to be present were not violated. <u>Id.</u> Respondent argues this decision was not contrary to, or an unreasonable application of, federal law. (Dkt. # 26).

After the jury was passed for cause, the trial court informed the parties they had twelve minutes to discuss matters and asked that counsel come to back to chambers to exercise their peremptory challenges. (Dkt. # 28-2, Tr. Vol. II at 80). Once in chambers, Petitioner's counsel and counsel for co-defendant, waived the presence of Petitioner and his co-defendant for the peremptory challenges. <u>Id.</u> Petitioner's counsel had five peremptory strikes. Petitioner argues that there is "no reason in the record" for two of the jurors counsel struck, while two of the jurors who served on Petitioner's jury "should have been removed." (Dkt. # 24 at 60). Petitioner states that Juror Tippit should have been removed because he was a career law enforcement officer and a current firefighter/EMT. <u>Id.</u> Tippit went on to serve as foreman of Petitioner's jury. Petitioner also

complains that Juror Still should have been removed because she had previously served with members of the prosecutor's office in drug court. Id.

It is well established that a defendant's right to be present at all stages of a criminal trial is rooted in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. See, e.g., Illinois v. Allen, 397 U.S. 337, 338 (1970); United States v. Gagnon, 470 U.S. 522, 526 (1985); Snyder v. Massachusetts, 291 U.S. 97 (1934), overruled in part on other grounds, Malloy v. Hogan, 378 U.S. 1 (1964). Additionally, in Oklahoma, a defendant's right to be present "at the trial" is protected by statute. See OKLA. STAT. tit. 22, § 583. Although "this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow,' due process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'" Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (quoting Snyder, 291 U.S. at 106-07, 108).

A defendant's right to be present during critical stages of trial may include the voir dire process. See Gomez v. United States, 490 U.S. 858, 873 (1989). However, the right to be present during voir dire is not absolute. Lockett v. Trammel, 711 F.3d 1218, 1250 (10th Cir. 2013). The Supreme Court "has consistently held that there is no freestanding constitutional right to peremptory challenges." Rivera v. Illinois, 556 U.S. 148, 157 (2009) (citing United States v. Martinez-Salazar, 528 U.S. 304, 311 (2000)). The Court characterizes peremptory challenges as "'a creature of statute,' and have made clear that a State may decline to offer them at all." Id. (citations omitted). Several federal circuit courts have held that "'if a defendant is given an opportunity to register his opinions with counsel after juror questioning and *is present when the exercise of strikes is given formal effect*, then his constitutional right to be present is satisfied.'" United States v. Thomas, 724

F.3d 632, 643 (5th Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1040 (U.S. 2014) (quoting <u>Cohen v. Senkowski</u>, 290 F.3d 485, 490 (2d Cir. 2002) (emphasis added), citing <u>United States v. Fontenot</u>, 14 F.3d 1364, 1370 (9th Cir. 1994); <u>United States v. Gayles</u>, 1 F.3d 735, 738 (8th Cir. 1993); <u>United States v. Bascaro</u>, 742 F.2d 1335, 1349-50 (11th Cir. 1984); <u>United States v. Washington</u>, 705 F.2d 489, 497 (D.C. Cir. 1983)).  "Therefore, as a baseline measure, if a defendant is not present during the reading of the list of jurors not struck (the moment the strikes are given 'formal effect') then the absence is in derogation of his constitutional right to be present."  <u>Id.</u>

Further, "[t]he constitutional and Rule-based right to presence at all critical stages of trial, though obviously important, is not . . . an absolute, systemic right." <u>United States v. Tipton</u>, 90 F.3d 861, 874 (4th Cir. 1996).  The Supreme Court has repeatedly upheld the power of courts in certain circumstances to conduct trials, or portions of trials, in the absence of the defendant.  <u>See</u> <u>Rushen v. Spain</u>, 464 U.S. 114, 117-18 (1983) (per curiam) (though right to personal presence is "fundamental," errors in conducting proceedings out of presence of defendant may be found harmless); <u>Allen</u>, 397 U.S. at 342-43; <u>Snyder</u>, 291 U.S. at 105-08.  To the extent the right is based upon the Due Process Clause, it is limited to "those circumstances where a defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend himself." <u>Tipton</u>, 90 F.3d at 874-75 (quoting <u>Snyder</u>, 291 U.S. at 105-08).  The right is thus by definition limited to those circumstances in which absence has a "prejudicial impact" on a defendant's opportunity effectively to assist in his defense.  <u>Id.</u> at 875.  The courts accordingly have so interpreted it, not as one to be enforced "independent of any prejudicial impact" from a defendant's absence but as one actually dependent upon the existence of such an impact.  <u>Id.</u> (citing <u>United States v. Boone</u>, 759 F.2d 345 (4th Cir. 1985) (absence from in-chambers conference between judge and counsel respecting

dismissal of juror did not, under the circumstances, frustrate trial's fairness); Fontenot, 14 F.3d 1364 (absence from peremptory challenge conference between judge and counsel not, under the circumstances, prejudicial); cf. United States v. Olano, 507 U.S. 725, 737-39 (1993) (finding that violation of FED. R. CRIM. P. 24(c) (providing for selection of alternate jurors) was not an "error affecting substantial rights independent of any prejudicial impact").

Here, Petitioner was present during the entirety of the questions and answers provided by the prospective jurors during voir dire, had time to consult with his counsel during voir dire and immediately prior to peremptory challenges, and Petitioner was present when the exercise of the peremptory strikes was given formal effect. At no time did he raise an objection nor does Petitioner claim that he told his attorney to strike Juror Tippit or Juror Still using a peremptory challenge, nor does he claim he protested to his attorney after the strikes were given formal effect. Therefore, under the facts of this case, Petitioner's absence during the in-chambers peremptory challenge conference did not result in a violation of his right to be present at a critical stage of trial.

In addition, Petitioner fails to demonstrate that his absence from the peremptory challenges conference had a prejudicial impact on his ability to assist effectively in his defense. Petitioner has not demonstrated that his jury was not impartial or was biased. Juror Tippit disclosed the fact he worked as a police officer for twelve years for Chief Bane, one of the State's witnesses. (Dkt. # 28-2, Tr. Vol. I at 15). Juror Still disclosed her past dealings with the prosecutor's office when she served on the drug court. Id. at 12. However, when asked, both jurors stated that their disclosed relationships would not impact their ability to make a decision based upon the evidence heard in this case. Id. at 12, 15. Still also stated that her experience on the drug court panel helped her "understand everybody's jobs and positions better." Id. at 75. Tippit stated that he would give equal

41

weight to Chief Bane's testimony, just like any other witness.  Id. at 15.  He also stated that he understood that even if someone is arrested by the police, the prosecutor still has to prove the elements of the crime in order for a defendant to be convicted of that crime.  Id. at 77.  Finally, Tippit stated even though he might think the defendant is guilty, the prosecutor still must meet the burden of proof.  Id. at 78.  Nothing in the record supports Petitioner's claim of juror bias.

After reviewing the record, Petitioner fails to show that he was deprived of due process and his right to be present during all critical stages of the trial.  Petitioner was present during voir dire, including when peremptory challenges were given full effect, and was present during the remaining part of the trial.  Petitioner fails to show how his absence in-chambers during peremptory challenges denied him an impartial jury.  Petitioner has not shown that the decision by the OCCA was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  Therefore, habeas corpus relief is denied on Ground VI.

### 8.     Cumulative error (Ground VIII)

In Ground VIII, Petitioner complains that "[t]he cumulative effect of all these errors deprived Petitioner of a fair trial and warrants relief."  (Dkt. # 24 at 8).  Petitioner argues that "all of the errors in petitioner's trial, upon proper review, cannot be considered harmless beyond a reasonable doubt." Id.  On direct appeal, the OCCA found that Petitioner was not denied a fair trial by cumulative error because a "sole error cannot support an accumulation of error claim."  (Dkt. # 26-3 at 9).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000)

(quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. <u>Workman v. Mullin</u>, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. <u>Le v. Mullin</u>, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing <u>Rivera</u>, 900 F.2d at 1471).

In this case, the Court has determined that Petitioner is entitled to habeas corpus relief on Ground IV and his Ground VII claims of ineffective assistance of counsel for failing to object to admission of prejudicial evidence and for failing to object to the admission of the co-defendant's statement as a confrontation clause violation. However, the Court did not find two or more harmless errors. Therefore, there is no basis for a cumulative error analysis. Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

## C.    Certificate of Appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

The court has determined that improperly admitted, prejudicial evidence deprived Petitioner of a fundamentally fair trial in violation of his right to due process and that trial counsel provided

ineffective assistance in failing to object to the admission of the prejudicial evidence and in failing to object to the admission of the co-defendant's statement as a confrontation clause violation. For those reasons, the amended petition for writ of habeas corpus is conditionally granted as to Grounds IV and parts of Ground VII. The Court finds that a certificate of appealability should not issue as to the denial of relief on the remaining claims. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA on those claims is debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk shall note on the record the substitution of Robert Patton, Director, in place of Joseph Taylor, Warden, as party respondent.

2. The amended petition for writ of habeas corpus (Dkt. # 24) is **conditionally granted** in part and **denied** in part, as follows:

   a. The amended petition is **conditionally granted** as to Ground IV and the Ground VII claims of ineffective assistance of trial counsel for failing to object to admission of prejudicial evidence and for failing to object to the admission of the co-defendant's statement as a confrontation clause violation. The writ of habeas corpus shall issue unless the State of Oklahoma commences new trial proceedings in Ottawa County District Court, Case No CF-2009-188A, within 180 days of the entry of this Opinion and Order.

   b. The remaining grounds for relief raised in the amended petition for writ of habeas corpus are **denied**.

3.      The original petition for writ of habeas corpus (Dkt. # 1) is **declared moot**.

4.      A certificate of appealability is **denied** as to the denial of relief on the remaining claims.

5.      A separate judgment shall be entered in this matter.


        **DATED** this 30th day of September, 2014.


                                        GREGORY K. FRIZZELL, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT